UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-mj-8271-BER

UNITED STATES OF AMERICA          )
                                  )
v.                                )
                                  )
JEFFREY SPIVACK,                  )
                                  )
                Defendant.        )
_____   )

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR RECONSIDERATION
OF DETENTION ORDER**

    **The UNITED STATES**, by and through the undersigned Assistant United States Attorney,

hereby files this Response to the Defendant's Motion for Reconsideration of Detention Order (DE

29.) The United States respectfully asks this Court to **DENY** Defendant's Motion for

Reconsideration as there remains no combination of conditions that would assure Defendant's

appearance at future court proceedings or adequately protect the public from harm.    In support of

its Response, the United States submits the following:

1.      Defendant was arrested on July 31, 2020 on a complaint which charged him with one count

of wire fraud, in violation of Title 18 U.S.C. §1343, and one count of Extortion by Interstate

Communications, in violation of Title 18 U.S.C. §875(b). DE 1. These charges stem from the

Government's allegations that Defendant defrauded an elderly victim who was suffering from

diminished mental acuity after a series of strokes and radiation treatments for brain cancer.    The

scheme to defraud involved Defendant convincing the victim that she could receive a $200 million

1

whistleblower award from the federal government by investigating purported misdeeds by the victim's ex-husband.   As part of the fraud, Defendant pretended to be a female undercover government agent, "Donna", and communicated with the victim in a series of phone calls in which he used a phone app to disguise his voice.   He/Donna also sent the victim a series of text messages, the most recent ones which contained threats to her life and the life of one of her daughters, who, coincidentally, had just begun to investigate why her mother had been sending exorbitant amounts of money to a bank account controlled by Defendant.   When confronted by her daughter, the victim admitted that Defendant was trying to help her get whistleblower reward money and that she needed to pay money in order for the investigation of her ex-husband to proceed.   In a phone call recorded by her daughter, the victim was told (by Defendant, pretending to be "Donna") that the only way to get out of danger was to pay an additional $350,000 immediately.

2.      It should be noted that Defendant is a licensed private investigator.   As such, he has access to databases to perform background checks on individuals.   He has a concealed weapons permit and had possessed two firearms.   However, these firearms were seized within a locked safe when the Federal Bureau of Investigation executed a search warrant at Defendant's residence on July 31, 2020. [1]  During the search, agents also recovered the Defendant's cell phone, which was found to contain the threatening text messages between "Donna" and the victim.   Defendant's phone also had a voice alteration app, a VPN app and various banking apps believed to be used to perpetrate the fraud scheme.

3.      The Government recounts these facts, although they were described in more detail during

---

[1] These firearms have since been returned to defense counsel.

the August 17 and August 19, 2020 pre-trial detention hearing before this Court.   DE 9 and 12.

Indeed, this Court recounted these facts in more detail in its pre-trial detention order.   DE 14.   In

ordering that Defendant be held in pre-trial detention, this Court concluded that "there is no

condition or combination of conditions of release that will reasonably assure Defendant's presence

if Defendant is released."   DE 14 at 5.   This Court based its decision on factors that still exist

today, except for one factor that the Defendant cites in the instant Motion: it appears Defendant

dissipated most of the $3 million stolen from the victim.   However, all of the remaining factors

upon which this Court based its decision to detain Defendant pending trial still remain.

4.      A detention hearing may be reopened if the Court finds that "information exists that was

not known to the movant at the time of the hearing and that has a material bearing" on the issue of

detention." 18 U.S.C. § 3142(f).   While Defendant argued, but could not prove, at the initial

detention hearing that he had no money with which to flee, his incentive to flee remains; his ability

to thwart court monitoring or supervision remains; his patterns of deceit evincing an

untrustworthiness remain; and the threats he made to the victim and her family remain.   These

factors continue to warrant a detention order at this time.

*Defendant remains a flight risk*

5.      There exists no new evidence to negate the Court's initial findings that Defendant is a

substantial or serious risk of flight or nonappearance.   This Court correctly found, by a

preponderance of the evidence, that Defendant was a flight risk.   At the time of the detention

hearing, this Court did base its decision, in part, on the fact that the stolen $3 million was

unaccounted for, and that the money could be used to flee the jurisdiction upon release.

Additionally, the Court found that if released, Defendant could continue his fraud and further make

3

the money unavailable to the Government.    The Court also cited the weight of the evidence as one factor providing an incentive for Defendant to flee.    Bank records showing that Defendant spent most of the $3 million on lavish gifts to his family, luxury cars, jewelry, vacations, family medical expenses, and not for any legitimate business or investment purposes, further strengthen the Government's case of fraud.    Although Defendant may not have $3 million to finance an escape from the jurisdiction of this Court, Defendant remains a flight risk.

6.    Although it now appears Defendant dissipated most of the stolen $3million, this fact does not negate the other findings upon which the detention order was based.    The fact that there is little money left does not negate "Defendant's expertise in counter surveillance and his ability to create fake personas and disguise locations, phone numbers and his voice, "- factors which also formed the basis of this Court's detention order.    DE 14 at 6.    In fact, since the initial pre-trial detention, the Government has confirmed even more circumstances of Defendant's lies and acts of deception.    For example, not only did Defendant falsely claim to pre-trial detention officers that he earned $8-9,000 per month in income, Defendant also lied on his mortgage application that he was earning $12,500/month from an investigative firm that has denied such employment. This purported employer also informed investigators that in June 2020, Defendant asked this person if Defendant could send him $13,500 via PayPal, and if this person would then wire the money directly back to Defendant.    Defendant told this person that he would explain why he needed to do this transfer, but that he couldn't provide details because a pending NDA (non-disclosure agreement) prevented him from disclosing the details.    This pattern of money transfers echos the pattern exhibited in Defendant's bank records in which he moves money among various accounts to make it appear that his business was receiving outside income.    In fact, the source of his money

4

remained the same- funds stolen from the victim in this case.     Defendant's acts of deception, lies and surreptitious activities, together with his self-professed expertise in "technical anti-surveillance measures"   (see Pre-trial services report at 2), continue to support the Court's initial findings that "Defendant's expertise in counter surveillance and his ability to create fake personas and disguise locations, phone numbers, and his voice" warrant his continued detention.   DE 14 at 6.   Defendant's pattern of deception suggests that Defendant would continue to pose a danger of further harm to the community if released. *See* 18 U.S.C. § 3142(g)(4); *United States v. Burke*, No. 13-20616-CR, 2013 WL 5194138, at *1 (S.D. Fla. Sept. 17, 2013); *United States v. King,* 849 F.2d 485, 487 n. 2 (11th Cir.1988) ( "dangerousness" extends to nonphysical harms). Accordingly, the Government asks that Defendant remain on pre-trial detention.   Defendant still faces a significant period of incarceration. The Government's case remains strong.   Defendant has exhibited a history of using deception, false identities and obfuscation of his location, and Defendant still possesses skills that can be used to evade detection or court monitoring if released on a bond.

*Defendant remains a danger to the community*

7.     In his Motion for Reconsideration of Detention Order, Defendant failed to present any new factor to persuade this Court to reverse its previous finding that Defendant posed a danger to the victim and society if released. As this Court noted, Defendant threatened the victim with physical harm and/or death of her and her daughter as part of his threats to extort money from the victim. Defendant used his contacts as a licensed private investigator to run an unauthorized background check on the victim's daughter – in the midst of the daughter investigating where her mother's money went and after Defendant (as Donna) told victim not to give her daughter power of attorney

over her finances.    This Court correctly found that the Government proved by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person and the community."    DE 14; 18 U.S.C. § 3142(f); s*ee United States v. Chimurenga,* 760 F.2d 400, 405-06 (2d Cir.1985).    The only new factor- that there no longer exists $3 million with which to flee- does not negate this finding.    Accordingly, the Government requests that Defendant remain in detention pending trial based on the danger posed to the victim and the community.

*Objections to Proposed Bond*

8.    Defendant proposes his release based on a personal surety bond collaterized by real estate owned by his parents and brothers.    However, Defendant's brother was the recipient of over $100,000 in stolen assets.    As will be explained more fully at the hearing on this Motion scheduled for December 4, 2020, the proposed bond conditions are insufficient to secure Defendant's future appearance before this Court.

<div style="margin-left:40%">

Respectfully submitted,
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:        *s/ Aurora Fagan*
           Aurora Fagan
           Assistant United States Attorney
           Florida Bar No. 0188591
           500 S. Australian Ave., Suite 400
           West Palm Beach, Florida 33401
           Tel: (561) 820-8711
           Fax: (561) 802-1787

</div>